NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

—————————————————— :
                                      :
READING ROCK NORTHEAST, LLC., :
                                      :
          Plaintiff,                  :
                                      :          Civil No. 20-5728 (RBK/KMW)
          v.                          :
                                      :          **OPINION**
RUSSEL, ET AL.,                       :
                                      :
          Defendants.                 :
—————————————————— :

**KUGLER**, United States District Judge:

Presently before the Court is Plaintiff Reading Rock Northeast, LLC's Motion to Dismiss or alternatively, Sever and Transfer (Doc. No. 12) counts two and three of Defendants' amended counterclaims. For the reasons set forth below, Plaintiff's Motion to Sever and Transfer counts two and three of Defendants' amended counterclaims pursuant to § 1404(a) is **GRANTED**.

## I. BACKGROUND[1]

This is a breach of contract case. The underlying controversy stems from the seller of certain assets, Russel Cast Stone, allegedly breaching its warranties and representations in an Asset Purchase Agreement. Reading Rock Northeast, LLC, the purchaser, brought suit seeking reimbursement for the $1.8 million it spent to remedy the problems caused by Russel Cast Stone. In response to Reading Rock's complaint, Russel Cast Stone asserted several counterclaims—

---

[1] Because Plaintiff Reading Rock Northeast, LLC's sole member—Reading Rock, Inc.—is an Ohio corporation with its principal place of business in Ohio, Defendants Mr. Russel and Russel Cast Stone are citizens of New Jersey, and the amount in controversy is alleged to be in excess of $75,000, this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

two of which Reading Rock now moves to dismiss or alternatively, sever and transfer, because they purportedly fall within the scope of a forum selection clause.

### A.  Factual Background[2]

Plaintiff Reading Rock Northeast, LLC ("Reading Rock") is an Ohio business engaged in the manufacture and supply of masonry goods, such as cast stone and other similar products. (Doc. No. 1, Compl. at ¶ 7). On June 29, 2018, Reading Rock entered into an Asset Purchase Agreement ("APA") with Defendants Russel Cast Stone—a New Jersey business that also manufacturers and supplies masonry goods—and its sole shareholder, William Russel, to purchase certain assets and assume certain liabilities. (*Id.* at ¶¶ 9, 13). Among the assets purchased by Reading Rock were Russel Cast Stone's accounts receivable and contracts, and in exchange for these assets, Reading Rock agreed to pay Russel Cast Stone $2 million plus the value of the accounts receivable and a percentage of the inventory. (Doc. No. 8-1, Exhibit A at 5).

Prior to execution of the agreement, Reading Rock insisted that Russel Cast Stone and William Russel provide certain warranties regarding the quality of the assets being acquired. (Doc. No. 1, Compl. at ¶ 12). Specifically, Mr. Russel and Russel Cast Stone represented and warranted that the accounts receivable "constitute[d] only valid undisputed claims of [Russel Cast Stone]" and were "not subject to claims of set-off or other defense." (*Id.* at ¶ 14). Likewise, they represented and warranted that Russel Cast Stone had "performed all of its obligations under" the Contracts and was "not in default under any of the Contracts and no grounds for

---

[2] In considering the motion to dismiss the counterclaim, the court considers the Employment Agreement—a document intimately associated with the Answer and counterclaims. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'") (citing *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

termination thereof exist[ed]." (*Id.* at ¶¶ 15–16). Moreover, both Russel Cast Stone and Mr. Russel agreed to indemnify Reading Rock for any claims or losses relating to "the improper performance or malfunctioning of any products" and for breach of any representation, warranty, or covenant contained in the Agreement. (*Id.* at ¶ 20).

After the closing of the transaction, Reading Rock discovered that Russel Cast Stone, under Mr. Russel's management, was plagued with production problems, quality control issues, other performance issues. (*Id.* at ¶ 23). It also soon discovered that many customers refused to pay for the goods or services sold by Russel Cast Stone before the closing and by Reading Rock after closing. (*Id.* at ¶¶ 24–25). Additionally, many customers claimed offsets, credits, chargebacks, canceled orders, sued Reading Rock, and encouraged others not to do business with it. (*Id.* at ¶¶ 26–27). As a result of these issues, Reading Rock has incurred out-of-pocket expenses to the tune of $1.8 million. (*Id.* at ¶¶ 28–29).

Less than a month after execution of the APA, Reading Rock entered into an Employment Agreement with William Russel for a term of five years. (Doc. No. 8, Am. Answer at ¶ 16). Mr. Russel was to function as the Regional Sales Manager for Reading Rock and, pursuant to this agreement, was to receive a base salary of $125,000 plus commission based on sales. (*Id.* at ¶ 17). The Agreement also provided that Mr. Russel would receive severance benefits upon separation from Reading Rock. (*Id.*). Section 12 of the Agreement, which is the focus of the current motion, reads:

> Applicable Law, Exclusive Venue, Consent to Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio without regard to any conflict-of-law principles. Moreover, any litigation under this Agreement shall be brought by either party exclusively in courts with jurisdiction in Hamilton County, Ohio. As such, the Parties irrevocably consent to the jurisdiction of the state and federal courts in and/or for Hamilton County, Ohio for all disputes related to or arising out of this Agreement.

(Doc. No. 8-2, Exhibit B at 8). Sometime in July, Mr. Russel underwent back surgery, consisting of a spinal fusion with metal rod implantation. (Doc. No. 8, Am. Answer at ¶ 18). He had informed Reading Rock of this impending surgery and his alleged physical disabilities prior to execution of the APA. (*Id.* at ¶¶ 18–19). Because of his disability, Mr. Russel requested that he spend most of his time in the office managing the sales force and making sales calls. (*Id.* at ¶ 20). However, Kevin Lawhorn, the sales manager who Mr. Russel reported to, increased the number of client "face visits" per month. (*Id.* at ¶ 21). Mr. Russel requested an adjustment and accommodation due to his disability but was never provided one. (*Id.* at ¶ 22). On April 22, 2019, Mr. Russel was terminated by Reading Rock because he failed to make a sufficient number of sales calls and did not visit certain markets as instructed. (*Id.* at ¶ 24). He did not receive any commissions or severance benefits as promised in the Employment Agreement. (*Id.* at ¶ 25).

### B. Procedural History

On May 8, 2020, Plaintiff Reading Rock filed suit against Russel Cast Stone and William Russel asserting claims for fraud in the inducement and breach of contract arising out of the representations and warranties in the Asset Purchase Agreement. (Doc. No. 1). Defendants answered and asserted several counterclaims. Counts two and three of Defendants' amended counterclaims, the two relevant for purposes of this motion, are a breach of contract claim against Reading Rock's arising from its failure to pay Mr. Russel's commissions and severance benefits, and the New Jersey Law Against Discrimination claim arising from Reading Rock's allegedly unlawful termination of Mr. Russel due to his disabilities. (Doc. No. 8). Plaintiff Reading Rock now moves to dismiss, or alternatively, sever and transfer these two counterclaims. (Doc. No. 12).

4

II.     **LEGAL STANDARD**

   **A.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

   The Third Circuit had held that a forum selection clause may be enforced under a

12(b)(6) standard. *Salovaara v. Jackson Nat. Life Ins. Co*., 246 F.3d 289, 299 (3d Cir. 2001)

("[A] 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause . . . ").

   Federal Rule of Civil Procedure 12 (b)(6) allows a court to dismiss an action for failure to

state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts

accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

(quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a

complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).

   To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster

Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a

plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

Second, the Court should identify allegations that, "because they are no more than conclusions,

are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  A complaint cannot

survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### B. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." It is well settled that a motion to transfer under § 1404(a) constitutes the appropriate procedural mechanism to enforce a forum selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013). However, as a threshold matter, the Court must first examine the scope and enforceability of the forum selection clause, prior to engaging in a transfer analysis.

## III. DISCUSSION

Plaintiff argues that counts two and three of Defendants' amended counterclaims—the breach of contract and New Jersey Law Against Discrimination claim—should be dismissed because they relate to the Employment Agreement which contains a valid and enforceable forum-selection clause requiring any disputes to be litigated in Ohio. Alternatively, Plaintiff requests that if this Court is not inclined to dismiss the two counterclaims, it should sever and transfer the counterclaims to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). Defendants, on the other hand, maintain the counterclaims should not be dismissed or transferred for several reasons. First, because Defendants are asserting *compulsory* counterclaims and the forum selection clause uses the word "brought," which denotes initiating an action, the compulsory counterclaims are not within its scope. Defendants rely on two cases within this Circuit to support this initial argument: *Excentus Corp.*, and *Jonathan H.* Second, New Jersey's

Entire Controversy doctrine bars a party from commencing multiple lawsuits arising out of a single event or transaction and therefore, because the counterclaims arise out of the same transaction as the claims asserted by Plaintiff, they must be brought in the same suit. Third, the counterclaim under the NJLAD does not arise out of a breach of the Employment Agreement, but rather arises out of Plaintiff's violation of New Jersey's employment laws and thus is not within the scope of the forum selection clause.

We agree with Plaintiff that counts two and three of Defendants' counterclaims fall within the scope of the forum selection clause and therefore must be litigated in Ohio. Defendants' argument to the contrary are built on the erroneous assumption that their counterclaims are compulsory. But as will be shown below, even the broader Entire Controversy Doctrine does not require the counterclaims to be asserted in this action. Moreover, the text of the forum selection clause clearly encompasses Defendant's counterclaims as they are "disputes" related to the Employment Agreement. We start with the Entire Controversy Doctrine because its inapplicability sheds light on the faulty nature of Defendants' assumption.

### A. Entire Controversy Doctrine

Defendants claim the Entire Controversy Doctrine requires it to assert all counterclaims in this action but provides no analysis to support this conclusion. This argument is unpersuasive, and the doctrine is not applicable to this action.

New Jersey's entire controversy doctrine is codified by Rule 4:30A which provides:

[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by Rule 4:64-5 (foreclosure actions) and Rule 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

Rule 4:30A provides no further guidance as to what claims are "required to be joined" by the doctrine, but the New Jersey Supreme Court has explained that the "claims must 'arise from related facts or the same transaction or series of transactions' but need not share common legal theories." *Bank Leumi USA, v. Kloss*, 243 N.J. 218, 226 (2020). The test for whether claims are "related" such that they must be brought in a single action is as follows:

> [If] the litigants in the action as framed will, after final judgment therein is entered, be likely to have to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. That result must obtain whether or not the component constitutes either an independent cause of action by technical common law definition or an independent claim which, in the abstract, is separately adjudicable.

*O'Shea v. Amoco Oil Co*., 886 F.2d 584, 590 (3d Cir. 1989). Put more concisely, "[t]he issue is, basically, whether a sufficient commonality of facts undergirds each set of claims to constitute essentially a single controversy that should be the subject of only one litigation." *Fields v. Thompson Printing Co*., 363 F.3d 259, 265 (3d Cir. 2004).

For instance, in *Fields* the Court held the entire controversy doctrine was inapplicable because the facts required to prove an ERISA and breach of contract claim were separate and distinct from the facts required to prove a hostile work environment claim. *Id.* at 266. The Vice President of a closely held corporation was fired after several employees complained that he sexually harassed them. *Id.* at 263. The employees filed suit against the Vice President, the CEO, and another supervisor for the alleged harassment. *Id.* While that case was still pending, the Vice President sued his former employer alleging the benefits promised in his contract were protected by ERISA and therefore the failure to pay the benefits violated this statute. *Id.* He also sought reinstatement of his salary and the benefits promised in his employment agreement under various state law theories, including breach of contract. *Id.* The former employer moved to dismiss the

claims arguing they were barred by the entire controversy doctrine because they should have been filed in the employees' lawsuit. *Id.* at 264. The Third Circuit rejected this argument because there was not such a "commonality of facts" undergirding the causes of actions that they essentially constituted a single controversy. In the hostile work environment action, the facts concerned "the nature of the work environment and what [the employer did to address the female employees' complaints" while in the ERISA and breach of contract action the court was concerned with the language of the employment contract and the parties' rights and obligations under that contract and ERISA. *Id.* at 266. Therefore, the court held the entire controversy doctrine did not apply.

Here, just like in *Fields*, there is not a sufficient "commonality of facts" undergirding the claims and counterclaims such that Defendants' counterclaims would be barred if they were litigated in a separate action. Plaintiff's claims for breach of contract and fraud in the inducement require us to consider the terms, representations, and warranties in the Asset Purchase Agreement. Counts one and four of Defendants' counterclaims, a breach of contract and fraud claim, are practically replicates of Plaintiff's claims because they also concern the terms of the Asset Purchase Agreement and representations made prior to or contemporaneous with its execution. Counts two and three of Defendants' counterclaims, however, are dissimilar because they require the Court to consider the terms of the Employment Agreement, Mr. Russel's performance on the job, and the parties rights and obligations under the NJLAD. Thus, because resolution of the two counterclaims turn upon vastly different sets of facts than Plaintiff's claims, the relationship between them is too attenuated to hold that the counterclaims and claims arise from a commonality of facts. Accordingly, the entire controversy doctrine does not require joinder of counts two and three of Defendants' counterclaims.

For Defendants, this conclusion essentially portends dismissal, or at the very least severance and transfer, of their counterclaims because Entire Controversy Doctrine is broader than the compulsory counterclaim rule. *See Bank Leumi USA, v. Kloss*, 243 N.J. 218, 227 (2020) (noting the entire controversy doctrine "is a broad one, more preclusive than both res judicata and the Restatement [ (Second) of Judgments]."); *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc*., 292 F.3d 384, 391 (3d Cir. 2002) (explaining there is a close connection between Rule 13(a) and the doctrine of claim preclusion (res judicata) because the definition of a compulsory counterclaim mirrors the conditions that trigger a defense of claim preclusion); *Mawhinney v. Bennett*, No. CIV.A 08CV3317NLHJS, 2010 WL 147945, at *6 (D.N.J. Jan. 11, 2010) (noting the "entire controversy doctrine reaches more broadly than the 'same cause of action' requirement of traditional res judicata doctrine"). It follows then that if Defendants' two counterclaims are not required to be joined under the Entire Controversy Doctrine, which includes a broader swath of claims, they certainly are not required to be asserted under the narrower compulsory counterclaim rule.

Indeed, courts have recognized that claims arising from separate contracts are not compulsory counterclaims and therefore can be tried in separate forums. *Innovative Tech Sys., Inc. v. Micro Computer Co.*, No. CIV. A. 97-CV-6927, 1998 WL 398245, at *1 (E.D. Pa. June 24, 1998) (finding the defendant's counterclaim seeking to enforce the promissory note was not a compulsory counterclaim because it sought to enforce a separate agreement); *see, Penn Life Ins. Co. v. Hallmark Ins. Administrators, Inc*., 31 F.3d 445, 448 (7th Cir.1994) (finding claims arising from separate contracts may be properly tried in separate forums). As noted above, counts two and three of Defendants' counterclaims seek to enforce the terms of the Employment Agreement while Plaintiff's claims seek to enforce the terms of the Asset Purchase Agreement.

Thus, the factual issues and basic controversy that comprise Plaintiff's claims are not related to those in Defendants' counterclaims. Accordingly, count two and three of Defendants' counterclaims are not compulsory counterclaims.

The logical consequence of this conclusion is that Defendants' counterclaims fall within the scope of the forum selection clause. That is to say, because the counterclaims were permissive, and not merely a compulsory response, Defendants "brought" or "initiated" a distinct dispute by asserting counterclaims that they did not have to. A textual analysis of the forum selection clause confirms this conclusion.

### B. Scope of Forum Selection Clause

The parties' disagreement over whether the counterclaims constitute compulsory counterclaims is in essence a dispute over the scope of the forum selection clause. Disagreements over the scope of a forum selection clause—whether it extends to a particular dispute—is governed by state law. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018). This is a result of *Erie* because the intended scope of a clause is not a procedural issue but a substantive question of contract interpretation. *Id.* Normally, that means applying the law of the state in which this Court sits—New Jersey. However, the forum selection clause in the Employment Agreement contains a choice of law clause requiring the laws of Ohio to be applied. This would normally invoke a choice of law analysis but because the parties did not rely on any distinctive feature of Ohio contract law in their briefs and the general principles are the same in either state, we will apply general contract principles. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (basing its decision on general contract principles even though the contract

11

provided it was to be governed by "English law" as the parties briefing did not rely on any distinctive feature of English law).[3]

### i. Application of General Contract Principles

The governing principle in contract interpretation is to give effect to the intent of the parties, and we presume that the intent of the parties is reflected in the plain language of the contract. *Integrated Health Res., LLC v. Rossi Psychological Grp., P.A.*, 537 F. Supp. 2d 672, 674 (D.N.J. 2008); *see also Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 99 (3d Cir. 2018) (noting that there is "no reason to presume the parties meant anything other than the dictionary definition of the term."). Likewise, the Court should "avoid ambiguities if the plain language of the contract permits . . . [and] should not torture the language . . . to create ambiguities." *Integrated Health Res.*, 537 F. Supp at 675. Therefore, "when the language of the contract is unambiguous . . . the inquiry ends and the court must enforce the contract as written." *Id.* at 674.

The forum selection clause in the Employment Agreement states:

Applicable Law, Exclusive Venue, Consent to Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio without regard to any conflict-of-law principles. Moreover, any litigation under this Agreement shall be brought by either party exclusively in courts with jurisdiction in Hamilton County, Ohio. As such, the Parties irrevocably consent to the jurisdiction of the state and federal courts in and/or for Hamilton County, Ohio for all disputes related to or arising out of this Agreement.

---

[3] Plaintiff cites to *Atlantic Maine* for the proposition that "when a party 'flouts its contractual obligation and files suit in a different forum' from the one chosen in the forum-selection clause, the court should apply the law of the chosen forum." But this case does not support Plaintiff's proposition. *Atlantic Maine* held "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64 (2013). This means the *Van Dusen* rule will not apply. It does not mean that this Court must apply the law of the chosen forum when deciding a § 1404(a) transfer motion.

Defendants maintain that the verb "brought" in the second sentence of the clause means "to cause to exist or occur" and therefore its counterclaims do not fall within the scope of the clause because they are reactive. They rely on *Excentus Corp. v. Giant Eagle*, Inc., No. CIV.A. 13-178, 2014 WL 923520, at *1 (W.D. Pa. Mar. 10, 2014) and *Jonathan H. v. The Souderton Area Sch. Dist.*, 562 F.3d 527, 529 (3d Cir. 2009) to support this argument. We disagree with Defendants' conclusion.

First, Defendants' reliance on *Excentus* is misplaced because the clause at issue in that case is different from the one at issue here. The Third Circuit explained that "drawing [an] analogy to other cases is useful only to the extent those other cases address contract language that is the same or substantially similar to that at issue." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 98 (3d Cir. 2018). In *Excentus*, the relevant forum selection clause read "venue for any action brought hereunder shall be proper exclusively in the county in which the respondent's principal officers are located." No. CIV.A. 13-178, 2014 WL 923520, at *6 (W.D. Pa. Mar. 10, 2014). Here, in contrast, the forum selection clause is last two sentences of the block quote above. This makes it much different from the clause in *Excentus*. Second, by presenting the forum selection clause as only the second sentence in the block quote above, Defendants would have us view each sentence as hermetically sealed from the other. We decline to adopt such a myopic and unduly rigid construction of the forum selection clause.

Plaintiff believes that *Atlantic Maine* requires us to enforce the selection clause because Defendants have not identified any "extraordinary circumstances." This is legally incorrect and misses the point. *Atlantic Maine*'s holding that "[o]nly under extraordinary circumstances" may a court decline to enforce a forum-selection presupposes the existence of an action that falls within the scope of a valid forum-selection clause. This is Defendants' very point—the

13

counterclaims did not fall within the scope of the forum selection clause and therefore *Atlantic Maine* is not controlling. While we do not agree with Defendant, Plaintiff's argument does nothing to advance its position and has been rejected the Third Circuit in *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 97 (3d Cir. 2018).

Because neither party has presented a persuasive analysis on this issue, we will briefly explain why the text of the forum selection clause compels transfer. The first sentence in the block quote above is the choice-of-law provision which is not relevant here. Instead, the forum selection clause is comprised of the last two sentences of the block quote, which must be read in tandem. The second sentence of the forum selection clause starts "any litigation under the Employment Agreement shall be brought" in Ohio. Black's Law dictionary defines "litigation" as "[t]he process of carrying on a lawsuit" or "[a] lawsuit itself." Black's Law Dictionary (11th ed. 2019). The latter definition comports closer with the intent of the parties because as Defendants points out, the verb "brought" is synonymous "to cause to exist or occur." Merriam Webster's Online Dictionary, http://www.merriamwebster.com/dictionary/bring (last visited on February 18, 2021). This makes the former definition of litigation too broad because it would encompass conduct like filing a motion for summary judgment or taking a deposition—conduct that indubitably constitutes "the process of carrying on a lawsuit" but which no one would argue equates with "bringing litigation." Thus, the word "litigation" would seem to mean to "a lawsuit" and if the forum selection clause stopped with the second sentence, we might agree with Defendants that the counterclaims are outside its scope. But it does not. The clause continues in a third sentence, and importantly, it starts with the phrase "as such."

Originally, "as such" meant "in itself" or "in that capacity." Oxford English Dictionary, https://www.oed.com/view/Entry/193400?redirectedFrom=as+such#eid165657473 (accessed

Feb 11, 2021); *In re Smurfit-Stone Container Corp.*, 444 B.R. 111, 119 (Bankr. D. Del. 2011).[4]
However, the modern trend has been to treat the phrase "as such" as synonymous with
"accordingly" or "consequently." *Id.* The third sentence starts with the phrase "as such" which
indicates that the parties intended this phrase to mean "accordingly" or "consequently."
Transition phrases like "consequently" and "accordingly" denote a logical relationship between
the premise and conclusion. *See* Merriam Webster's Online Dictionary, https://www.merriam-
webster.com/dictionary/consequently (last visited on February 18, 2021). The premise, as noted
above, is that "[a]ny litigation under this Agreement shall be brought by either party exclusively"
in Ohio and the conclusion is that "all disputes related to or arising out of this Agreement" are to
take place in the state or federal courts in Hamilton County, Ohio. Therefore, by "any litigation"
the parties did not mean only "a lawsuit itself," rather they intended this phrase to encompass
"all disputes."[5] The counterclaims asserted by Defendants represent a dispute arising out of and
related to the Employment Agreement because they would not exist in the absence of the
Agreement.[6] Accordingly, the plain language of the forum selection clause compels the
conclusion that the counterclaims should have been filed in Ohio.

---

[4] When used for its traditional meaning, "as such" refers to something already mentioned in the sentence—an antecedent. For instance, in Ralph Cudworth's *The True Intellectual System of the Universe* (1668) he uses the word "as such" to mean "in itself": "If Matter as such, had Life, Perception, and Understanding belonging to it." Oxford English Dictionary, https://www.oed.com/view/Entry/193400?redirectedFrom=as+such#eid165657473 (accessed Feb 11, 2021). However, this quote from the Spectator founded by Richard Steele uses the phrase "as such" to mean "in that capacity: "When she observed Will. irrevocably her Slave, she began to use him as such." *Id.*

[5] Use of the adjective "any" to modify the noun "litigation" certainly supports this commonsense conclusion as well.

[6] Defendants also maintains that their NJLAD claim is not within the scope of the forum selection clause because it existed regardless of whether there was an employment agreement. But it is well settled that "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause." *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988). Rather, courts should look to the language of the forum selection clause to determine how broadly the clause should be read. *O'Shaughnessy v. Palazzo*, No. CV 19-5115, 2020 WL 6271268, at *3 (E.D. Pa. Oct. 26, 2020). The phrase "relating to" is broad and can include a dispute whose origin "has some logical or causal connection" to the agreement. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (internal quotations omitted). Defendants' NJLAD claim has a logical connection to the Employment Agreement because but for the Employment Agreement, he would not have been employed and therefore subject to the alleged discrimination. Therefore, the NJLAD claim also falls within the scope of the forum selection clause.

15

Moreover, this interpretation fits within the plain meaning of the verb "brought." The word "brought" is the past tense of "bring." Merriam Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/brought (last visited on February 18, 2021). The pertinent definition of "bring" is "to cause to exist or occur." Merriam Webster's Online Dictionary, http://www.merriamwebster.com/dictionary/bring (last visited on February 18, 2021). When Defendants asserted their permissive counterclaims, they "cause[d] to exist" a dispute or litigation that was distinct from Plaintiff's claims. Indeed, that is the very nature of a permissive counterclaim.

Lastly, this conclusion would make sense even if Defendants were asserting compulsory counterclaims. Normally, if a party does not assert a compulsory counterclaim in the first action, it is barred in subsequent litigation. However, the effect of the forum selection clause is that Plaintiff promised not to invoke the defense of preclusion in Ohio. *Publicis Commc'n v. True N. Commc'ns Inc.*, 132 F.3d 363, 366 (7th Cir. 1997) (reasoning if the parties promise to litigate a dispute only in a particular forum, a party to the contract cannot seek to bar the litigation in that forum because the claim was not presented in some other forum); *accord Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp.*, 589 F.2d 1214, 1220 (3d Cir. 1978) (noting that even though a compulsory counterclaim not raised in the first action is barred in subsequent litigation, it does not follow that the claim is also barred from consideration in subsequent arbitration).

### C. The Applicable § 1404(a) Considerations Weigh in Favor of Transfer[7]

---

[7] We have discretion to decide whether to dismiss or transfer the two counterclaims. *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 289–299 (3d Cir. 2001). But "it makes better sense, when venue is proper [and] the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss." *Id.* at 299. Venue is clearly proper in this district and the counterclaims do not have an impact on this determination. *Rohn & Assocs., LLC v. Marshall A. Bell & Assocs., P.C.*, 71 V.I. 392, 404 (Super. Ct. 2019) (noting "venue is determined according to where the plaintiff's cause of action arose, not the defendant's counterclaims."); *U.S. For Use & Benefit of Kashulines v. Thermo Contracting Corp.*, 437 F. Supp. 195, 197 (D.N.J. 1976) (same). Therefore, severance of the two counterclaims and transfer is the better route.

Ordinarily, in a case not involving a forum selection clause, a court evaluates a § 1404(a) motion using such factors as the convenience of the parties and the relevant public interests. *Mathias v. Caterpillar, Inc*., 203 F. Supp. 3d 570, 574 (E.D. Pa. 2016). However, if a forum-selection clause enters the picture, the calculus changes and it should be given controlling weight in all but the most exceptional cases. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). In *Atlantic Marine*, the Supreme Court clarified that "the presence of a valid forum selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 63. First, district courts must give no weight to the plaintiff's choice of forum; rather the party defying the forum selection clause bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Id.* Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause must deem the private interest factors to weigh entirely in favor of the preselected forum. *Id.* at 582. Third, and as a logical consequence of the second change, a district court may consider arguments about public interest factors only. *Id.* The Supreme Court explained that, with these modifications, district courts should enforce valid forum selection clauses "in all but the most unusual cases."

In considering whether such extraordinary circumstances exist, a court may consider "arguments about public interest factors only," including "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in the forum that is at home with the law." *Atl. Marine*, 134 S.Ct. at 581. The public interest factors must "overwhelmingly disfavor a transfer to overcome the forum selection clause." *Id.* at 583.

As the party acting in violation of the forum-selection clause, Defendants bear the burden of showing that the public-interest factors overwhelming disfavor enforcing the clause. Defendants

have not met their burden. Indeed, Defendants do not even address the public interest factors let alone show that they overwhelmingly disfavor enforcement. Therefore, this Court finds that transfer to the Southern District of Ohio is warranted. *Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017) (finding the district court correctly dismissed the action on *forum non conveniens* grounds because the plaintiff failed to carry her burden as the party resisting the forum selection clause when she did not address the public interest factors with any specificity).

This Court notes that it may sever claims under Federal Rule of Civil Procedure 21, and then transfer the severed claims under Section 1404(a), while retaining jurisdiction over the remaining claims in an action. *Dao v. Knightsbridge Int'l Reins. Corp.*, 15 F. Supp. 2d 567, 576 (D.N.J. 1998); *see also White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999) ("Nothing within § 1404 prohibits a court from severing claims against some defendants from those against others and transferring the severed claims."). This procedure is "not likely to be appropriate where the partial transfer would require the same issues to be litigated in two places." *Dao*, 15 F. Supp. 2d at 576 (quotation and citation omitted). Moreover, severance is inappropriate where the "potential inefficiency of litigating the same facts in two separate forums" outweighs "the convenience to the parties requesting transfer." *White*, 199 F.3d at 144. Here, transferring counts two and three of Defendants' counterclaims is appropriate because they relate to the Employment Agreement while counts one and four relate to the Asset Purchase Agreement. Thus, the same issues and facts would not be litigated in two places. Accordingly, severance and transfer is appropriate.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion to sever counts two and three of Defendants' counterclaims and transfer them pursuant to § 1404(a) to the Southern District of Ohio is **GRANTED**. An appropriate order follows.

Dated: <u>Dated:  3/8/2021</u>                                       <u>s/ Robert B. Kugler</u>
                                                                    ROBERT B. KUGLER
                                                                    United States District Judge