IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| WILLIAM N. RUSSELL, III, | : | CASE NO. 1:21-CV-00172 |
| 1145 CHANTICLEER, | : | |
| CHERRY HILL, NEW JERSEY 08003, | : | (Judge Michael R. Barrett) |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **AMENDED COMPLAINT** |
| | : | |
| READING ROCK NORTHEAST, LLC, | : | **WITH JURY DEMAND** |
| 4600 DEVITT DRIVE, | : | **REQUESTED** |
| CINCINNATI, OHIO 45246, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

---

## AMENDED COMPLAINT OF DEFENDANT WILLIAM N. RUSSELL, III

Plaintiff William N. Russell, III ("Mr. Russell") for his Amended Complaint against Defendant Reading Rock Northeast, LLC, formerly known as Reading Rock Russell, LLC ("Reading Rock") states and alleges as follows:

1. The action stems from a proceeding filed by Reading Rock against Mr. Russell and Russell Cast Stone, Inc. ("Cast Stone") that is pending in the United States District Court for the District of New Jersey, Case No. 1:20-CV-5728, in which Reading Rock brought claims against Mr. Russell related to an Agreement for Sale of Business Assets ("APA"). Mr. Russell filed counterclaims against Reading Rock, some of which have been transferred to this Court.

2. Not only is Reading Rock in violation of the APA and Employment Agreement, but it also wrongfully terminated Mr. Russell based on his disability and failed to provide him with reasonable accommodations for said disability while he was employed by Reading Rock.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §1332. The action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue is proper in this district, pursuant to 28 U.S.C.§1391(a)(1) or (2).

5. William N. Russell, III is an individual residing at 1145 Chanticleer, Cherry Hill, New Jersey 08003.

6. Non-party Cast Stone is a New Jersey Corporation, with its principal place of business at 1145 Chanticleer, Cherry Hill, New Jersey 08003.

7. Upon information and belief, Reading Rock Northeast, LLC is an Ohio corporation.

## FACTUAL ALLEGATIONS

A.    Reading Rock Breached the APA

8. On June 29, 2018, Russell Cast Stone, Inc. ("Cast Stone") entered into the APA with Reading Rock. As part of the APA, Cast Stone agreed to sell certain assets to Reading Rock and Reading Rock agreed to assume certain liabilities (See generally, APA, a true and accurate copy of which is attached as Exhibit "A").

2

9.    In exchange for the purchase and sale of assets, Reading Rock agreed to pay Cast Stone $2,000,000.00, plus 50% of inventory as of the closing date that exceeded a set amount, plus Accounts Receivable (collectively, the "Purchase Price").  Id.

10.    Pursuant to the APA, the Purchase Price was to be reduced by, among other things, "an amount equal to the sum of (i) the total Accounts Receivable, which are ninety (90) days or older (the 'Old AR') and (ii) an amount equal to five percent (5%) of all Accounts Receivable less than ninety (90) days (the 'Current AR Holdback')" (collectively, the "AR Holdback").  Id.

11.    The Purchase Price was also to be reduced by "the sum of One Hundred Thousand ($100,000.00) Dollars which shall be held by Buyer [Reading Rock] for a period of One Hundred Eighty (180) days following the Closing (the 'Holdback Period') to pay any Excluded Liability which is asserted against the Business or the Transferred Assets (the 'Liability Holdback')."  Id.

12.    The Purchase Price was further reduced by "the sum of One Hundred Thousand Dollars ($100,000.00) to be held until both delivery of an updated Phase 1, which costs of the updated Phase 1 shall be borne by Buyer [Reading Rock], indicating the Real Estate . . . is in full compliance with all federal, state and local environmental laws, and delivery to Buyer [Reading Rock] of a written determination by the New Jersey Department of Environmental Protection that the Real Estate and the transactions contemplated hereunder have satisfied all rules under the Industrial Site Recovery Act."  Id.

13.    Further, Section 4.1 of the APA states: "[o]n or before each 60 day period following Closing, Buyer [Reading Rock] shall prepare and deliver to Seller [Cast Stone] a

statement setting forth its calculation of the amount of Accounts Receivable collected by Buyer [Reading Rock] between each 60 day period and shall remit that portion of the AR Holdback attributable to the Accounts Receivable, which shall be 100% of any Old AR collected and 5% of any Current AR collected during that period. Within thirty (30) days after the expiration of the Holdback Period, Buyer [Reading Rock] shall prepare and deliver to Seller [Cast Stone] a statement setting forth his calculation of the Excluded Liabilities paid by Buyer [Reading Rock] and shall remit to Seller [Cast Stone] the remainder of the Liability Holdback." Id.

14.     In addition to the Purchase Price, under Section 4.2 of the APA, Reading Rock was to pay to Cast Stone, an additional amount of up to a maximum amount of $2,000,000.00 (the "Earn Out Amount"). The Earn Out Amount was to be paid over the course of a five (5) year period after the closing. Id. The Earn Out Amount was to be calculated by payment to Cast Stone, an amount that exceeded earnings before interest, taxes, depreciation amortization ("EBITDA") of the business that exceeded $400,000.00 for the immediately previous twelve (12) month period. Id.

15.     Under the APA, the first payout of the earn out amount was due to Cast Stone "ninety (90) days after the first anniversary of the Closing Date based upon the trailing twelve-month operation of the Business after the Closing. The additional interim Earn Out Amounts shall be due ninety (90) days after each succeeding anniversary of the Closing Date until the earlier of (i) the fifth anniversary of the closing date or (ii) Sellers [Cast Stone] receipt of the Maximum Earn Out Amount has been paid in full." Id.

       B.      <u>Reading Rock Discriminated Against Mr. Russell</u>

16.     On July 16, 2018, Mr. Russell and Reading Rock entered into an Employment Agreement for a term of five (5) years. (A true and correct copy of the Employment Agreement is attached hereto and incorporated herein as Exhibit "B").

17.     Pursuant to the Employment Agreement, Mr. Russell was to receive compensation that consisted of a base salary of $125,000.00 ***plus*** commissions that were based on sales (Exhibit B, Section 4). In addition, under Section 7 of the Employment Agreement, Mr. Russell was to receive severance benefits, as defined by the Employment Agreement, upon his separation from Reading Rock.

18.     In July of 2017, Mr. Russell underwent back surgery on his lower back, consisting of a spinal fusion with metal rod implantation. This fact was made known to Reading Rock prior to the closing date of the APA, which was on July 17, 2018 (Exhibit A, Section 6.1).

19.     Mr. Russell suffers from a physical impairment that substantially limits one or more major life activities, including the functions of performing manual tasks, walking, driving, traveling, and working.

20.     Pleading in the alternative, Reading Rock regarded Mr. Russell at all material times as suffering from a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working.

21.     On June 28, 2018, Mr. Russell sent an email to Reading Rock's Manager, Gordon Rich, notifying him of his disability issues prior to acquisition.  Mr. Russell's disabilities were also discussed with Reading Rock's employee, Mark Swortwood, many times.

22.     Mr. Russell, as a Sales Manager, requested to spend most of his time in the office, managing the Sales Force and making sales calls, as he had done successfully for forty-five (45) years, as an accommodation for his disability.

23.     On February 6, 2019, Mr. Russell began reporting to Kevin Lawhorn ("Lawhorn"), a sales manager, who increased the demands and "face visits" required of Mr. Russell.  Lawhorn required Mr. Russell to make over forty (40) face calls per month.

24.     Mr. Russell requested several times an adjustment and accommodation due to his on-going disability.  At no time did Reading Rock provide an accommodation.

25.     Despite these increased demands, Mr. Russell maintained above average results.

26.     On April 8, 2019, Mr. Russell saw a podiatrist, complaining of cold feet and leg cramping.  On this date, Mr. Russell presented to Lawhorn an arterial doppler examination of his left foot, which required a vascular medical procedure to correct.  Lawhorn continued to press on the job duties of Mr. Russell, irrespective of his medical condition and his disability.

27.     On April 22, 2019, in spite of his known disability, Mr. Russell was terminated by Reading Rock for failure to perform (i.e., failure to satisfy the heightened

6

requirements imposed by Reading Rock, which did not provide any reasonable accommodations to Mr. Russell for his disability).

28.     Mr. Russell never received any commissions pursuant to Section 4(b) of the Employment Agreement or severance benefits pursuant to Paragraph 7 of the Employment Agreement.

**FIRST CAUSE OF ACTION**
**(BREACH OF EMPLOYMENT AGREEMENT)**

29.     Mr. Russell alleges and incorporates by reference the allegations set forth in Paragraphs one (1) through twenty-eight (28) of this Amended Complaint as if fully set forth herein.

30.     Pursuant to Section 4(b) of the Employment Agreement, Mr. Russell was to receive commissions as part of his compensation.  At no time did Reading Rock pay Mr. Russell any commissions as enumerated under the Employment Agreement.

31.     Pursuant to Section 7 of the Employment Agreement, Mr. Russell was to receive severance benefits upon separation from Reading Rock.  Reading Rock never paid Mr. Russell any of the severance benefits nor the remaining amounts due for compensation under the Employment Agreement.

32.     Mr. Russell accepted employment and provided his skills and services to Reading Rock in exchange for the promises made by Reading Rock in the Employment Agreement.

33. Reading Rock breached the Employment Agreement by failing to pay Mr. Russell commissions and severance benefits under the Employment Agreement.

34. Due to Reading Rock's breach, Mr. Russell suffered damages in excess of $1,200,000.00, in addition to, but without limitation, other serious financial and pecuniary harm, out-of-pocket expenses, loss of opportunity income and other related costs.

**SECOND CAUSE OF ACTION**
**(READING ROCK – FAILURE TO PROVIDE REASONABLE ACCOMMODATION)**

35. Mr. Russell alleges and incorporates by reference the allegations set forth in Paragraphs one (1) through thirty-four (34) of this Amended Complaint as if fully set forth herein.

36. Mr. Russell is qualified to be a Sales Manager with Reading Rock.

37. Mr. Russell suffers from a physical impairment that substantially limits one or more major life activities, including the functions of performing manual tasks, walking, driving, traveling, and working.

38. Pleading in the alternative, Reading Rock regarded Mr. Russell at all material times as suffering from a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working.

39. On several occasions, Mr. Russell advised and made known to Reading Rock of his physical disabilities. Mr. Russell requested reasonable accommodations, which were

available and would allow Mr. Russell to fulfill his duties and obligations under the Employment Agreement.

40.     Indeed, Mr. Russell was able to complete substantially the same employment responsibilities with accommodations for forty-five (45) years.

41.     Throughout the entirety of Mr. Russell's employment with Reading Rock, Reading Rock refused to accommodate Mr. Russell's disability and also failed to appreciate his physical disabilities.

42.     Moreover, Reading Rock failed to require Lawhorn to provide reasonable accommodations to Mr. Russell, despite knowing of his disabilities.

43.     Reading Rock was required to engage in an interactive process to explore potential accommodations for Mr. Russell's disability or perceived disability.

44.     Reading Rock failed to engage in the interactive process with Mr. Russell.

45.     Due to Reading Rock's failure to provide reasonable accommodations, Mr. Russell was terminated.

46.     Therefore, Reading Rock's failure to provide Mr. Russell with reasonable accommodations is a violation of R.C. 4112.02 and Mr. Russell is entitled to an unknown amount of damages.

## THIRD CAUSE OF ACTION
## (READING ROCK – DISABILITY DISCRIMINATION)

47.     Mr. Russell alleges and incorporates by reference the allegations set forth in Paragraphs one (1) through forty-six (46) of this Amended Complaint as if fully set forth herein.

48.     As alleged above, Mr. Russell is disabled or was regarded by Reading Rock as disabled.

49.     Reading Rock terminated Mr. Russell claiming he failed to fulfill his employment duties.  Reading Rock advised Mr. Russell that his termination was because he failed to make a sufficient number of sales calls, and also because he failed and/or refused to visit the markets that Reading Rock instructed him to visit.  Mr. Russell's inabilities to perform the above tasks were due to his physical disabilities, which Mr. Russell communicated to Reading Rock prior to entering into the APA; subsequent to the APA; and at the time of the Employment Agreement.

50.     Mr. Russell successfully completed substantially the same job responsibilities for forty-five (45) years with reasonable accommodations.

51.     Reading Rock had no legitimate business interest for terminating Mr. Russell.

52.     Therefore, Reading Rock's decision to terminate Mr. Russell due to "performance issues" exasperated by his disability is a violation of R.C. 4112.02 and Mr. Russell is entitled to an unknown amount of damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Russell respectfully requests that this Court grant the following

relief:

A.     Enter Judgment in favor of Mr. Russell against Reading Rock on the claims alleged against it;

B.     Award Mr. Russell the amount owed to him pursuant to the Employment Agreement;

C.     Award Mr. Russell compensatory, consequential, and punitive damages, plus interest, costs, and attorneys' fees; and

D.     Such other relief, both legal and equitable, to which Mr. Russell may be entitled.

Respectfully submitted,

/s/ Stephen A. Weigand
Stephen A. Weigand (0083573)
    Trial Attorney
Jason W. Palmer (0088336)
FARUKI PLL
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
Telephone:  (513) 632-0306
Fax:  (513) 632-0319
Email:
        sweigand@ficlaw.com
        jpalmer@ficlaw.com

Attorneys for Plaintiff
William N. Russell, III

## **JURY DEMAND**

Plaintiff requests a trial by jury as to all matters set forth in his Amended

Complaint.

/s/ Stephen A. Weigand
Stephen A. Weigand

**CERTIFICATE OF SERVICE**

I certify that on the 17th day September of, 2021, I electronically filed the

foregoing Amended Complaint with the Clerk of Courts using the CM/ECF system, which will

send notification of such filing to CM/ECF participants:

Jeffrey M. Nye, Esq.
Joshua M. Smith, Esq.
Peter A. Saba, Esq.
Stagnaro, Saba & Patterson Co., L.P.A.
2623 Erie Ave.
Cincinnati, OH  45208
jmn@sspfirm.com
jms@sspfirm.com
pas@sspfirm.com

Attorneys for Plaintiff
Reading Rock Northeast, LLC

/s/ Stephen A. Weigand
Stephen A. Weigand