# EXHIBIT A

<u>AGREEMENT FOR SALE OF BUSINESS ASSETS</u>

This AGREEMENT FOR SALE OF BUSINESS ASSETS ("Agreement"), made and entered into as of this 29th day of June, 2018, by and between RUSSELL CAST STONE, INC., a New Jersey corporation (the "Seller") and its sole officer, director and shareholder, WILLIAM RUSSELL, III (the "Shareholder") and READING ROCK RUSSELL, LLC, an Ohio limited liability company (the "Buyer"):

W I T N E S S E T H:

In consideration of the respective covenants of the parties and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned do hereby mutually agree as follows:

1.    <u>Purchase and Sale of Assets</u>.  Seller agrees to sell and Buyer agrees to buy, upon the terms and conditions herein set out, all of Seller's right, title, and interest in and to Seller's assets, except for the Excluded Assets, used in connection with Seller's cast stone manufacturing, distributing, and retail business (collectively, the "Business"), of whatever kind or nature, tangible or intangible, owned, leased, licensed, used, or held for use or license by Seller, free and clear of any encumbrance other than Permitted Encumbrances, including but not limited to, the following described property of Seller used in the Business (collectively, the "Transferred Assets"):

1.1.    All finished product inventory, raw materials, molds and mold work in process existing as of the Closing Date, including without limitation, the inventory listed on <u>Schedule 1.1</u> attached hereto ("Inventory");

1.2.    All contracts used in the Business including, without limitation, equipment leases and customer orders, open orders, remaining open orders that have been partially filled, change orders, backlog, and purchase orders existing as of the Closing Date (collectively, the "Contracts"), to which Seller is a party or that are binding on Seller (1) with respect to the Business, (2) to which any of the Transferred Assets are subject or (3) pursuant to which Seller has the right to receive revenue with respect to the Business or any of the Transferred Assets. All such Contracts as of the date of this Agreement are listed on <u>Schedule 1.2</u> attached hereto;

1.3.    All unpaid and outstanding accounts receivable in the name of Seller and related to the Business, and any security, claim, remedy or other right related to any of the foregoing, including without limitation, such receivables identified and reflected on <u>Schedule 1.3</u> (the "Accounts Receivable");

1.4.    All quote files, records and documents of the Business, including without limitation, those records and documents pertaining to vendors, suppliers, and customers;

1.5.    All telephone numbers, websites, website addresses, web domains, email addresses, and any social media account maintained by Seller related to the Business, all log-in information, passwords, and access codes related thereto and any other intellectual property owned by Seller and used in connection with the Business;

1.6. All equipment, furniture, and tools used in the Business, including without limitation, the equipment, furniture, and tools set forth in the fixed asset list attached hereto as **Schedule 1.6** ("Fixed Assets");

1.7. Any security deposits or prepaid cash amounts Seller received from the customers prior to the Effective Time for orders placed by customers that Buyer has the obligation to fulfill after the Effective Time ("Prepaid Deposits") except that portion of the Prepaid Deposit that has been earned and applied against invoiced amounts prior to the Effective Time;

1.8. All intellectual property owned by, or registered in the name of, the Seller or any of its affiliates, that is used in the Business, including, but not limited to the exclusive use of the name Russell Cast Stone, and any patents, designs, inventions, trademarks, trade names, service marks, copyrights, computer software, manufacturing processes, know-how, and confidential and proprietary information used in the Business (collectively "Intellectual Property"); and

1.9. All goodwill associated with the foregoing.

2. **Excluded Assets**. Seller shall not sell, assign, transfer, convey or deliver and Buyer shall not buy, acquire or accept (and the Transferred Assets shall not include) any right, title or interest in any of the following (collectively, the "Excluded Assets"):

2.1. All cash and cash equivalents of Seller other than the Prepaid Deposits as provided in 1.7 above;

2.2. Any note receivable in the name of Seller including any stock subscription receivable;

2.3. All certificates of deposit or investments;

2.4. All of Seller's bank accounts, prepaid insurance premiums; and

2.5. All assets used or held for use in the Business that are specifically listed on **Schedule 2.5** ("Excluded Assets").

3. **Liabilities**.

3.1. Subject to the terms and conditions set forth herein, Buyer shall assume and agree to pay, perform and discharge only the following liabilities of Seller (collectively, the "Assumed Liabilities"), and no other liabilities:

3.1.1. all liabilities related to the assigned Contracts, but only to the extent that such liabilities thereunder are required to be performed after the Closing Date, were incurred in the ordinary course of the Business, and do not relate to any failure to perform, improper performance, warranty or other breach, default or violation by Seller on or prior to the Closing, and were disclosed on **Schedule 1.2**.; and

       3.1.2.   those accounts payable liabilities of Seller existing as of the Closing Date set forth in **Schedule 3.1.2** which **Schedule 3.1.2** will be updated at the Closing. Buyer will insure payment thereof in a timely fashion after attempts to negotiate the dollar amount due thereunder in a commercially reasonable manner.

       3.2.     Notwithstanding the provisions of Section 3.1, Buyer shall not assume and shall not be responsible to pay, perform or discharge any liabilities of Seller of any kind or nature whatsoever other than the Assumed Liabilities unless otherwise provided for herein. Except as may be provided for herein, Buyer does not assume nor shall Buyer have any responsibility for payment of any liability or obligation (absolute, accrued, fixed or contingent, matured or unmatured or otherwise) whatsoever of Seller related to the Business, including but not limited to, said accounts payable, debts, taxes, liabilities and other obligations of Seller. Seller hereby agrees to indemnify, defend, and forever hold Buyer and its affiliates harmless from any and all claims, liabilities, losses, damages and costs and expenses, including attorney fees, arising out of or resulting from any accounts payable, debts, taxes, liabilities and/or obligations of Seller related to the Business that arise from actions of Seller occurring prior to the Effective Time (as defined later herein) (the "Excluded Liabilities"). Without limiting the generality of the foregoing, the Excluded Liabilities shall include, but are not limited to the following:

       3.2.1.   any liabilities for any taxes of Seller or the Shareholder including, but not limited to any taxes related to the operation of the Business prior to the Closing, taxes arising out of the consummation of the transactions contemplated hereby and any accrued and unpaid sales taxes or other taxes of the Business;

       3.2.2.   the note payable due to the Shareholder as reflected on the May 31, 2018 Balance Sheet of the Seller;

       3.2.3.   any liability with respect to any pending or threatened action arising out of, relating to or otherwise in respect of the operation of the Business or the Transferred Assets to the extent such action relates to such operation on or prior to the Closing;

       3.2.4.   any product liability or similar claim for injury to any person or property which arises out of or is based upon any express or implied representation, warranty, agreement or guarantee made by Seller or by reason of the improper performance or malfunctioning of any products, improper design or manufacture, failure to adequately package, label or warn of hazards or other product defects of any products at any time manufactured or sold or service performed by Seller;

       3.2.5.   any liabilities of Seller for any present or former employees, officers, directors, independent contractors or consultants of Seller, including without limitation any liabilities associated with any claims for wages or other benefits, bonuses, accrued vacation, Worker's Compensation, severance, retention, termination or other payments;

       3.2.6.   any liabilities resulting from outstanding checks of the Seller presented for payment on or after the Closing Date;

3.2.7. liabilities related to any and all medical claims resulting from any medical condition;

3.2.8. liabilities with respect to all pending or threatened litigation and claims relating to any infringement by the Seller of any patent, copyright, trademark, trade name, know how, trade secret or other proprietary right of any other person in connection with the conduct of the Business;

3.2.9. liabilities relating to (1) all indebtedness of the Seller for borrowed money or for the deferred purchase price of property or services, including the current portion of such indebtedness, (2) all obligations of the Seller evidenced by notes, bonds, debentures or similar instruments and (3) all capital lease obligations of the Seller;

3.2.10. liabilities arising under any environmental laws or relating to any release of hazardous substance, which arise or result, directly or indirectly, from conditions existing or operations conducted at any facility owned, operated, leased or used by the Seller;

3.2.11. fees and expenses incurred by the Seller in connection with negotiating, preparing, closing and carrying out this Agreement and the transactions contemplated by this Agreement, including the fees, expenses, disbursements and expenses for the Seller's attorneys, accountants, investment bankers, brokers and consultants;

3.2.12. liabilities from or relating to claims or liabilities for benefits or pay under any employee benefit plan, employment contract or agreement, or any severance payment, including those related to any alleged termination of employment solely as a result of the transactions contemplated hereby;

3.2.13. liabilities with respect to any claim, action, suit or proceeding by an employee of the Business who was terminated by the Seller;

3.2.14. except those listed in the Accounts Payable, liabilities relating to credit cards used for the Business;

3.2.15. liabilities relating to or arising with respect to any of the Excluded Assets; and

3.2.16. any liabilities arising from United Employment Group v. Russell Cast Stone, Court of Common Pleas of Lehigh County, PA, Civil Division-Law, Docket #2018-C-1522.

3.3. Without limiting the generality of Section 3.2, Buyer shall not assume or otherwise become a sponsor of, maintain or continue any "Benefit Plan", as defined below, maintained by Seller or any "Related Party", as defined below, and no assets or liabilities of any of the Benefit Plans or any fiduciary, as defined in the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, with respect to such Benefit Plans, will be transferred to or assumed by Buyer. For purposes of this Section 10(b), the term "Benefit Plan" means any pension plan, profit sharing plan, life insurance plan, severance pay plan, vacation pay plan, supplemental unemployment benefit plan, deferred compensation plan, fringe benefit plan, medical plan,

disability plan, salary continuation plan, bonus plan, dependent care plan, incentive plan, or other similar arrangement, whether or not such plans or programs are employee benefit plans within the meaning of Section 3(3) of ERISA, whether funded or unfunded, and whether or not maintained pursuant to a collective bargaining agreement. For purposes of this Section 10(b) the term "Related Party" means Seller and any trade or business (whether or not incorporated) which together with Seller would be considered a single employer under Titles I, II, III or IV of ERISA. Seller shall remain liable for Seller's required compliance, if any, with COBRA for those employees of Seller not hired by Buyer, including the costs of the administration thereof.

4.    Purchase Price.

4.1.    The aggregate purchase price to be paid to Seller by Buyer for the Transferred Assets shall be an amount in cash equal to the sum of Two Million Dollars ($2,000,000), *plus* fifty percent (50%) of the amount the Inventory as of the Closing Date exceeds the Inventory as of March 31, 2018, in the amount of $120,928 (provided however the methodology used to determine the Inventory as of the Closing Date shall mirror the methodology used to determine the Inventory in the amount of $120,928 on March 31, 2018), *plus* the Accounts Receivable (the "Purchase Price"). At the closing of the transactions contemplated herein (the "Closing"), Buyer shall pay Seller the Purchase Price *less* the following amounts: (a) an amount equal to the accounts payable being assumed by Buyer ("Assumed AP"); (b) an amount equal to the sum of (i) the total Accounts Receivable which are ninety (90) days or older (the "Old AR") and (ii) an amount equal to 5% of all Accounts Receivable less than ninety (90) days (the "Current AR Holdback") (the Old AR and the Current AR Holdback are jointly referred to herein as the "AR Holdback"); (c) an amount equal to the job/freight reconciliation adjustment as set forth in **Schedule 4.1(c)**; (d) the sum of One Hundred Thousand Dollars ($100,000.00) which shall be held by Buyer for a period of one hundred eighty days following the Closing (the "Holdback Period") to pay any Excluded Liability which is asserted against the Business or the Transferred Assets (the "Liability Holdback"); (e) the amounts paid to the job/secured creditors of Seller at Closing; (f) the sum of One Hundred Thousand Dollars ($100,000.00) to be held until both delivery of an updated Phase 1, which cost of the updated Phase 1 shall be borne by Buyer, indicating the Real Estate (defined below) is in full compliance with all federal, state and local environmental laws, and delivery to Buyer of a written determination by the New Jersey Department of Environmental Protection that the Real Estate and the transactions contemplated hereunder have satisfied all rules under the Industrial Site Recovery Act, (g) the sum indicated by the New Jersey Division of Taxation necessary to comply with the bulk sale notification requirements pursuant to the statutes of New Jersey (the "Bulk Escrow"), plus the sum of all sales taxes owed to the State of New Jersey, estimated to be in the amount of $23,200 unless already provided for in the Bulk Escrow, and real estate taxes owed to Berlin Township estimated to be in the amount of $42,300 and (h) the sum of Ninety Thousand Six Hundred and 00/100 Dollars ($90,600.00) representing the estimated cost of repairs due to the deferred maintenance identified on the attached **Schedule 4.1(h)** ("Estimated Repair Cost"), which repairs identified on the attached **Schedule 4.1(h)** shall be assumed by Buyer (the "Assumed Differed Maintenance Repairs"). In the event the actual cost of the Assumed Differed Maintenance Repairs is less than the Estimated Repair Cost, Buyer shall deliver to Seller the difference between the actual cost of the Assumed Differed Maintenance Repairs and the Estimated Repair Cost as soon as reasonably practical after completion of the Assumed Differed Maintenance Repairs but in no event later than one hundred eighty days following the Closing. On

or before each 60 day period following Closing, Buyer shall prepare and deliver to Seller a statement setting forth its calculation of the amount of Accounts Receivable collected by Buyer between each 60 day period and shall remit that portion of the AR Holdback attributable to the collected Accounts Receivable, which shall be 100% of any Old AR collected and 5% of any Current AR collected during that period. Within thirty (30) days after the expiration of the Holdback Period, Buyer shall prepare and deliver to Seller a statement setting forth its calculation of the Excluded Liabilities paid by Buyer and shall remit to Seller the remainder of the Liability Holdback.

Prior to making a payment from the Liability Holdback, Buyer agrees to consult with Seller, and give Seller a reasonable opportunity to intervene and defend, any such third party claim which Buyer concludes is an Excluded Liability which has been asserted against the Business or the Transferred Assets.

Regarding the AR Holdback, Buyer shall exercise all commercially reasonable efforts to collect the Accounts Receivable, which shall not include the initiation of legal proceedings. Buyer shall provide Seller with such information as it reasonably requests related to such collection efforts. Seller may also assist Buyer with respect to such collection efforts consistent with the past practices of the Business if requested by Buyer.

If a portion of the Accounts Receivable has not been collected by Buyer on or before December 31, 2018 (the "Uncollected AR"), and Buyer has been paid for such Uncollected AR either through a reduction of the Purchase Price at Closing for the Old AR or the Current AR Holdback (collectively the "Satisfied Uncollected AR"), then the portion of the Accounts Receivable representing the Satisfied Uncollected AR shall be deemed assigned to Seller. On the other hand, to the extent Buyer has not collected a portion of the Accounts Receivable either through reasonable collection efforts, (collectively the "Unsatisfied Uncollected AR"), then the portion of the Accounts Receivable representing the Unsatisfied Uncollected AR shall not be deemed assigned to Seller.

Seller agrees that, in the event any Accounts Receivable are held in or deposited into any of the depository accounts of Seller following the Closing, Seller shall immediately remit such funds to Buyer.

4.2. In addition to the Purchase Price, Buyer shall pay to Seller an additional sum in the form of an earn out payment (the "Earn Out Amount") up to a maximum amount of $2,000,000 (the "Maximum Earn Out Amount"). Such Earn Out Amount shall be determined based upon the EBITDA of the Business. During the five (5) year period after the Closing, Buyer shall pay to Seller annual interim Earn Out Amounts in an amount by which the EBITDA of the Business exceeds $400,000 for the immediately previous twelve-month period. The first annual interim Earn Out Amount shall be due to Seller within ninety (90) days after the first anniversary of the Closing Date based upon the trailing twelve-month operation of the Business after the Closing. The additional interim Earn Out Amounts shall be due ninety (90) days after each succeeding anniversary of the Closing Date until the earlier of (i) the fifth anniversary of the Closing Date or (ii) Seller's receipt of the Maximum Earn Out Amount has been paid in full. If prior to the fifth anniversary of the Closing Date, the average EBITDA of the Business exceeds

$800,000 over a trailing thirty-six month period beginning after the Closing, Seller's right to receive the Maximum Earn Out Amount shall be accelerated and the balance of the Maximum Earn Out Amount (ie. $2,000,000 less the cumulative earn out amounts paid to Seller after the Closing) shall be paid to Seller within ninety (90) days of such calculation.

    4.3  The Purchase Price shall be allocated among the Transferred Assets being purchased according to the attached **Schedule 4.3**.

  5.  **Employees**.

    5.1.  Buyer shall be under no obligation to offer employment to any employees of Seller. Notwithstanding the foregoing, in the event Buyer offers employment to any such employees of Seller, Seller shall use its best efforts to assist Buyer in hiring such employees.

  6.  **Closing.**

    6.1.  The Closing shall take place on or before July 17, 2018, at 10:00 a.m. or at such other time and manner mutually agreeable between the parties (the "Closing Date"). Subject to the parties' meeting all of the closing conditions and the consummation of the Closing on the Closing Date, the sale, assignment, transfer, and conveyance to Buyer of the Transferred Assets and the assumption by Buyer of the Assumed Liabilities will be effective as of 12:01 am Eastern time on June 29, 2018 (the "Effective Time").

    6.2.  At the Closing, Seller shall deliver to Buyer:

      6.2.1.  possession of the Transferred Assets;

      6.2.2.  a bill of sale for the Inventory, Accounts Receivable, Fixed Assets, Intellectual Property and goodwill free and clear of all liens, interests, claims, leases and encumbrances;

      6.2.3.  an assignment and assumption agreement for the Contracts;

      6.2.4.  all quote files, records and documents described in Section 1.3 above; provided that Buyer agrees that Seller is entitled to retain a copy of such records and documents.

      6.2.5.  all contact information, telephone numbers, log-in information, passwords, and access codes referred to in Section 1.4 above;

      6.2.6.  resolutions signed by the Shareholder and all directors of Seller authorizing the transaction contemplated herein;

      6.2.7.  an executed employment agreement between Shareholder and Buyer in the form attached hereto as **Schedule 6.2.7** (the "Employment Agreement");

      6.2.8.  an assignment and/or lease for the real estate located at 400 Cooper Road, West Berlin, New Jersey (the "Real Estate"), upon substantially similar terms to the Real

Property Lease defined in Section 10.1.18, below, except that the term shall be five (5) years, the annual rent shall be fixed at $25,000 per month, Buyer shall have both a right of first option and a right of first refusal to purchase the Real Estate (the "Lease"); and

6.2.9.   such other documents as Buyer may reasonably request.

6.3.   At the Closing, Buyer shall deliver:

6.3.1.   the Purchase Price less applicable holdbacks and secured party payments as reflected on the closing statement;

6.3.2.   the executed Employment Agreement;

6.3.3.   resolutions signed by the directors of Buyer authorizing the transaction contemplated herein to Seller;

6.3.4.   the Lease executed by it; and

6.3.5.   such other documents as Seller may reasonably request.

7.   **Prorations.**   To the extent not included in the Assumed Liabilities or not otherwise provided in this Agreement, all utility charges, rental charges, equipment charges, lease payments, personal property taxes, and all other items, if any ("Proration Items"), (i) that are paid by Buyer and that relate, in whole or in part, to periods prior to the Effective Time, or (ii) that have been or are paid by Seller and that relate, in whole or in part, to periods after the Effective Time, shall be apportioned to the Effective Time, and Seller and Buyer will examine all relevant books and records as of the Closing Date in order to make the determination of the apportionments, which determinations shall be calculated in accordance with the past practices of the Business to the extent applicable.  To the extent reasonably practicable, the net amount of all such Proration Items will be settled and paid on the Closing Date.  In the event that the amount of any of such Proration Items is not known by Seller and Buyer at the Closing, the proration shall be made based upon the amount of the most recent cost of such Proration Item to Seller.  After Closing, Buyer and Seller shall provide to the other written notice, thirty (30) business days after receipt, of each third party invoice relating to any Proration Item so estimated.  Within ten (10) business days thereafter (but in no event earlier than payment of the underlying invoice), Buyer and Seller shall make any payments to the other that are necessary to compensate for any difference between the proration made at the Closing and the correct proration based on the third party invoice.  The parties shall fully cooperate to avoid, to the extent legally possible, the payment of duplicate Proration Items, and each party shall furnish, at the request of the other, proof of payment of any Proration Items or other documentation that is a prerequisite to avoiding payment of a duplicate Proration Item.

8.   **Communications to Suppliers.**   The parties agree to cooperate with each other in any reasonable manner in assuring that all suppliers and creditors of Seller with respect to the Business shall be fully informed of this sale and that all debts incurred by Seller in conducting the Business on the aforesaid premises up to the date of the Closing shall be those of Seller and all

Assumed Liabilities and all debts incurred by Buyer after the date of the Closing shall be those of Buyer.

9.     **Covenant Not to Compete**.  In consideration of, and as an inducement for Buyer to enter into this Agreement, Seller and Shareholder, jointly and severally, agree that for a period of five (5) years after the Closing (except as to Shareholder, the period shall be the lesser of 5 years from the Closing Date or 2 years from the date of Shareholder's termination of employment with Buyer if such termination is not for cause), neither of them will, directly or indirectly, own, manage, operate, join, control or participate in the ownership, management, operation or control of, any business whether in corporate, proprietorship, limited liability or partnership form or otherwise where such business is competitive with the cast stone business of the Business.  This Agreement shall apply in each state where Seller and/or Buyer has transacted business at any time during the twenty-four-month period immediately preceding the Closing. The parties hereto specifically acknowledge and agree that the remedy at law for any breach of the foregoing will be inadequate and that the Buyer, in addition to any other relief available to it, shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damage, court costs and reasonable attorney fees. In the event that the provisions of this Section 9 should ever be deemed to exceed the limitation provided by applicable law, then the parties agree that such provisions shall be reformed to set forth the maximum limitations permitted. The terms of this Section 9 shall survive the Closing.

10.     **Representations, Warranties and Covenants of Seller/Shareholder**.

10.1.    Seller, and Shareholder, jointly and severally, warrant and represent to and covenant and agree with Buyer that, except as may otherwise be disclosed herein:

10.1.1. Seller is a duly organized, validly existing corporation organized and in good standing under the laws of New Jersey.

10.1.2. Seller has full and lawful right, power and authority to execute and deliver this Agreement and to consummate the transaction specified herein. This Agreement constitutes a legal, valid, and binding obligation of the Seller, enforceable against Seller in accordance with its terms, and no authorization, consent, or approval by, or filing with, any governmental authority is required for, or in connection with, the performance or consummation by Seller of this Agreement.

10.1.3. Seller owns and has, and at the Closing shall deliver to Buyer, good and marketable title to all of the Transferred Assets free and clear of all liens, mortgages, security interests and other encumbrances, except for those sales taxes payable to the State of New Jersey estimated to be in the approximate amount of $23,200, and those real estate taxes payable to Berlin Township estimated to be in the amount of $42,300.

10.1.4. There are no existing agreements, options, commitments or rights with, of or to any person to acquire any of the Transferred Assets or rights included in the Transferred Assets or any interest therein.

00441300-5                                           9

10.1.5. Except as set forth on **Schedule 10.1.5**, there is no litigation, claim, court order, decree, investigation, audit or other proceeding or condition pending or threatened by any person, firm, corporation or other entity or by, before or in any court or governmental commission, agency or other public authority, against Seller or involving the Assets nor does Seller or Shareholder know of any reasonably likely basis for any such suit, action, proceeding or investigation.

10.1.6. Seller is and has been in compliance with all laws relating to the employment and employment practices, including but not limited to, laws relating to discrimination, equal employment opportunity, wages, hours, safety, collective bargaining and the payment of social security and other taxes.

10.1.7. Seller is in full compliance with all environmental laws, which compliance includes, but is not limited to, the possession by Seller of all permits and other governmental authorizations required under applicable environmental laws and regulations, and compliance with the terms and conditions thereof.

10.1.8. All material items or tangible property included in the Transferred Assets are in good operating condition and repair, subject to normal wear and maintenance, and are usable in the ordinary course of business.

10.1.9. The Accounts Receivable (a) have arisen from bona fide transactions entered into by Seller in the ordinary course of business, and (b) constitute only valid, undisputed claims of Seller not subject to claims of set-off or other defenses. If Seller receives any Accounts Receivable after the Closing Date, Seller will hold and will promptly transfer and deliver to Buyer, from time to time as and when received by Seller, any cash, checks with appropriate endorsements (using their reasonable efforts not to convert such checks into cash), or other property that Seller may receive on or after the Closing which are part of the Accounts Receivable, and will account to Buyer for all such receipts.

10.1.10. Seller owns or holds licenses or other rights to use all trademarks, service marks and trade names necessary for the conduct of the Business. To the best of Seller's knowledge, Seller has not infringed, and is not now infringing, on any trade name, trademark or service mark belonging to any other person, firm or corporation. Seller is not a party to any license, agreement, or arrangement, whether as licensor, licensee, or otherwise, with respect to any trademarks, service marks, trade names associated with the Business or applications for them.

10.1.11. Seller has provided Buyer a complete and accurate list of all agreements, written and oral, to which Seller is a party, or of which Seller is aware, included within the following categories:

10.1.11.1. purchase agreement, warranty, maintenance agreement, or equipment lease pertaining to any of the tangible Transferred Assets;

10.1.11.2. agreement settling or compromising any claims or rights held or asserted by Seller with respect to the Transferred Assets;

10.1.11.3.    promissory note, loan agreement, guarantee or other agreement or commitment for the borrowing of money which is secured in part or in whole by any of the Transferred Assets, or which requires the other party to consent to the proposed sale of Transferred Assets;

10.1.11.4.    license, franchise, purchase or other agreement which relates to the ownership, scope or use of the intellectual property;

10.1.11.5.    agreement or commitment for persons other than Seller's employees to perform continuing or future services for the Business;

10.1.11.6.    noncompetition or similar agreement which restricts the Business or, to the best of Seller's knowledge, any of Seller's employees from engaging in any activity, including any noncompetition agreement.

10.1.11.7.    joint venture or partnership agreements involving Seller;

10.1.11.8.    real estate leases; and

10.1.11.9.    any other agreement material to the Business.

10.1.12.    Except as anticipated herein, no consent or approval of any third party is required to authorize or to permit the consummation of the transfer of the Assets to Buyer as contemplated by this Agreement and that Seller has in its possession all licenses and permits required to conduct the Business.

10.1.13.    Seller has performed all of Seller's obligations under the Contracts to be performed by Seller as of the date hereof, (ii) Seller is not in default under any of the Contracts and no ground for termination thereof exists, (iii) no event has occurred which, with the giving of notice or passage of time, or both, could result in a default by Seller under any of the Contracts; and (iv) Seller has no outstanding performance obligations with respect to any of the Contracts.

10.1.14.    Seller has timely filed within the time period for filing or any extension granted with respect thereto any and all federal, foreign, state, local and other returns, reports and estimates ("Returns") which Seller is required to file with respect to any and all taxes or other governmental charges, obligations or fees, including but not limited to any income, business, occupation, franchise, sales or use, withholding and secondary or transferee liability for taxes and any related interest or penalties thereon ("Tax" or "Taxes") attributable to or connected with the Business or the Transferred Assets. All such Tax Returns are true and correct and have been completed in accordance with applicable law. Seller has paid all Taxes shown to be due and payable on such Returns and has withheld all amounts it is required to withhold with respect to its employees. There are no pending or, to the best of Seller's knowledge, threatened audits,

examinations, assessments, asserted deficiencies, or claims for additional Taxes. There are (and as of immediately following the Closing there will be) no liens or similar encumbrances on the Transferred Assets, except for liens for current real or personal property taxes not yet due and payable. Seller has no knowledge of any basis for the assertion of any claim with respect to Taxes which would result in a lien or similar encumbrance on the Transferred Assets or otherwise adversely affect the Buyer.

10.1.15. All financial information provided to Buyer is accurate and complete and was prepared in accordance with generally accepted accounting principles consistently applied and fully and fairly represent the financial condition of Seller as of the dates and for the periods respectively covered by them.

10.1.16. Seller has duly complied with all applicable laws, rules, regulations, ordinances, and all judgments, orders, rulings, and decrees of all federal, state and local governmental authorities (collectively, "Laws"), subject to such exceptions as shall have no material adverse effect on the Transferred Assets or the Business. Seller has not received notification of any asserted present or past failure to so comply with any Laws. Seller is not aware of any pending or threatened legal or administrative proceedings or investigations, which if determined adversely to Seller, would result in any material adverse change to the Business or to any of the Transferred Assets or would materially affect the ability of Seller to perform its obligations hereunder.

10.1.17. Except as otherwise set forth on Schedule 10.1.17, Seller has performed all of Seller's obligations under the real estate lease for the property located at 400 Cooper Road, West Berlin, New Jersey (the "Real Property Lease"), to be performed by Seller as of the date hereof, (ii) Seller is not in default under the Real Property Lease and no ground for termination thereof exists, (iii) no event has occurred which, with the giving of notice or passage of time, or both, could result in a default by Seller under the Real Property Lease; and (iv) Seller has no outstanding performance obligations with respect to the Real Property Lease.

10.2. Seller and Shareholder, jointly and severally, shall indemnify and defend Buyer against, and hold Buyer harmless from any loss, cost, liability or damage, including reasonable attorney fees (collectively "Loss"), arising out of or relating to the breach by Seller of any representation, warranty and/or covenant contained in this Agreement. The representations, and warranties contained in this Agreement shall survive the Closing for a period of twelve (12) months.

11. Representations and Warranties of Buyer:

11.1. Buyer warrants and represents to and covenants and agrees with Seller that:

11.1.1. Buyer is an Ohio limited liability company and in good standing under the laws of Ohio licensed to transact business in the State of New Jersey.

11.1.2. Buyer has full power and authority to execute, deliver and perform its obligations under this Agreement. All actions of Buyer necessary for such execution, delivery and performance have been, or, as of the Closing, will have been duly taken.

11.1.3. Buyer has properly registered with the State of New Jersey to conduct business activities in this State.

11.1.4. Buyer will fulfill all undertakings and commitments set forth in this Agreement in a timely and commercially reasonable manner.

11.1.5. Buyer acknowledges that Buyer has been given free and unrestricted access to the books and records, invoicing procedures, actual invoices, contracts, backlog, billing procedures, billing formulas and procedures of Seller.

11.1.6. Buyer shall indemnify and defend Seller against, and hold Seller harmless from any Loss, arising out of or relating to the breach by Buyer of any representation, warranty and/or covenant contained in this Agreement. The representations, and warranties contained in this Agreement shall survive the Closing for a period of twelve (12) months.

12. **Contingencies to Buyer's Obligations Hereunder**. The obligations of Buyer to consummate on the Closing date the transactions contemplated in this Agreement are contingent upon the following conditions taking place to the satisfaction of Buyer:

12.1.1. Buyer shall be satisfied with its due diligence and investigation, and Buyer's sole and absolute discretion.

12.1.2. The representations and warranties of Seller contained herein shall be true and correct in all material respects on the Closing date.

12.1.3. Seller shall have performed its obligations hereunder and otherwise complied with its covenants hereunder prior to or at Closing.

12.1.4. There shall be no injunction, decree or order issued by any court or governmental agency or authority or any litigation instituted challenging or seeking to prohibit or enjoin any of the transactions contemplated by this Agreement or the Business of Seller.

12.1.5. The Assets shall be in good and working order and shall not have been materially damaged or destroyed either by natural disaster, act of God, or other casualty which is not covered by the Seller's insurance.

13. **Sales and Use Taxes**. All sales, use, transfer and all other similar non-income taxes or expenses (collectively, "Transfer Expenses") arising out of or in connection with the purchase and sale of the Transferred Assets and the consummation of the transactions contemplated hereby shall be paid by Buyer, regardless of which party is legally responsible for any Transfer Expense, separate and apart from and in addition to the Purchase Price. To the extent permitted under applicable law, all Inventory shall be purchased exempt from sales or use

tax by Buyer as a sale for resale, or any other available exemption, and Buyer, if required by applicable law, shall furnish Seller at Closing with appropriate and fully and properly completed sales tax resale exemption certificates for the Inventory, which Seller may accept in good faith. Each party shall file all necessary tax returns and other documents required to be filed by such party with respect to the Transfer Expenses, and the other party shall, to the extent reasonably necessary, cooperate with such party to make such filing or tax returns.

14.    **Notices.**  All notices required or permitted herein shall be in writing, sent to the party to whom addressed at the following address(es) and shall be deemed delivered to, and received by the other party when (i) actually received, if hand delivered, (ii) when received when given by Federal Express or other twenty-four (24) hour delivery service, package prepaid, based on receipt evidencing delivery from the relevant delivery service or (iii) when received after being deposited in the United States Mail by certified mail, return receipt requested, postage prepaid, based on the return receipt received through the United States Mail; the address(es) being as follows:

| | |
|---|---|
| To Seller: | Russell Cast Stone, Inc.<br>1145 Chanticleer<br>Cherry Hill, New Jersey 08003<br>Attention: William N. Russell, III |
| With copy to: | Cahill, Wilinski, Rhodes & Joyce<br>89 N. Haddon Avenue, Suite A<br>Haddonfield, New Jersey 08033<br>Attention: Peter M. Rhodes, Esq. |
| To Buyer: | Reading Rock Russell, LLC<br>4600 Devitt Drive<br>Cincinnati, Ohio 45246<br>Attention: Gordon Rich |
| With copy to: | Stagnaro, Saba & Patterson Co. L.P.A.<br>2623 Erie Avenue<br>Cincinnati, Ohio 45208<br>Attention: Jeffrey G. Stagnaro, Esq. |

or at such other address or addresses as may be delivered in writing to the other party.

15.    **Choice of Law.**  This Agreement shall be governed by the laws of the State of New Jersey, without giving effect to any choice or conflict of law provision or rule.

16.    **Jurisdiction/Venue.**  The jurisdiction and venue of any dispute under the terms of this Agreement shall be in a court of competent jurisdiction located in the State of New Jersey.

17.    **Miscellaneous.**  Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any party hereto (except by operation of law), in whole

00441300-5                                      14

or in part, without the prior written consent of the other party. Subject to the preceding sentence, this Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and each party's respective successors and assigns. This Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

18. **Entire Agreement**. This Agreement supersedes all prior agreements and understandings between the parties with respect to the subject matter hereof.

19. **Counterparts**. Delivery of an executed signature page to this Agreement by any party by electronic transmission will be as effective as delivery of a manually executed copy of this Agreement by such party. Counterpart signatures shall be deemed to be originals.

[*Signatures on next page*]

IN WITNESS WHEREOF, the parties have hereunto executed this Agreement the day and year first above written.

SELLER:

Russell Cast Stone, Inc.,
a New Jersey corporation

By:
Name: William N. Russell, III
Title: President

William N. Russell, III, individually

BUYER:

Reading Rock Russell, LLC,
an Ohio limited liability company

By:
Name: Gordon Rich
Title: Manager

00441300-5                    16